All right, be seated. Our third and final case this morning, 24-4059, United States v. Malacca, District Court. Mr. Newland. Thank you, Your Honor, and may it please the Court. Do not think about prison as a way to rehabilitate. Those are the clear words of Justice Kagan in Tapia v. United States. It is the clear directive of 18 U.S.C. 3624A. In this case, the District Court committed plain error when it extended my client's sentence far beyond the sentencing guideline range to, in fact, the maximum for the purposes of promoting rehabilitation. The rehabilitation, in this case, being medical compliance with my client's intravenous drugs that he receives from FMC Rochester for Schizophrenia. Over the course of two days, the District Court extensively focused... Why do we even think about that as being rehabilitation? I mean, just as, like, a threshold matter, like, why is medical treatment considered rehabilitation? I mean, they seem quite different to me. I mean, maybe I just don't understand what the word rehabilitation means, but I tend to think that rehabilitation feels different than medical compliance. First of all, I'm sure that Your Honor does understand the word rehabilitation probably better than I do. My response to that would be, in this context, in the argument that we're making, when we say rehabilitate, I think it's illustrated by the fact of the judge saying, well, you're a danger to society, but only when you're not on your medication. Or, you can come back and submit a compassionate release motion... So take the example where a judge said, might be wrong for other reasons, but do you think it would violate TAPIA if a judge said, I would otherwise sentence you to six months, but I'm going to sentence you to two years, because you need a kidney transplant, and the BOP has a great kidney transplant program. False, by the way, but accept the hypothetical, right? Would that be a TAPIA problem? I would take it as a TAPIA problem, Your Honor. But why? Because we don't think rehabilitation as having better health, we're not rehabilitating from a health perspective. We're talking about rehabilitating from your criminal proclivities. Well, Your Honor, actually, if we look back at TAPIA, the facts of TAPIA are the residential drug abuse program. So that is a mental health program, that is an intensive mental health program, needing over 500 hours that inmates have to complete, and the judge had extended the sentence to say, hey, I'm going to give you a little bit more time to make sure you can get through RDAP, because by all accounts, you have a drug problem, and we want to make sure that you're able to do the intensive drug program. And on appeal, the Ninth Circuit said, yeah, that's fine. And the Supreme Court said, well, no, no, no, no, no, the exact words are, do not think about prison as a way to rehabilitate in the context of the RDAP program, which I'm sure is... I know that the TAPIA inquiry is really hard, but if a judge says the following, like, one of the things I'm supposed to think about is incapacitation, right, and protecting the public from you. And I have this dilemma that I had a case a few years ago like this, where the judge basically says, like, here's this dilemma. I have every indication that when you're properly medicated, you're not dangerous to other people. But I also have a lot of indication that when you're not properly medicated, you are extremely dangerous to other people, which means that given that I have to protect the public, my answer about whether to release you depends entirely on whether you're on your medication. And then the judge says further, by the way, because of your extensive experience with the criminal justice system, I know that despite what you tell me right now, that you definitely promise, pinky swear, to take your medication from here on out, I don't believe you, sir. And I don't believe you for very good reasons involving your former conduct. So therefore, I guess I've just concluded I need to leave you in prison because that's the only place I can make sure you get your medication. Is that a topia violation? I'll just tell you that my instinct is it's not. That's about incapacitating the defendant. I agree, Your Honor. And I think that's about correct.  And that case is different from this case. How? Well, I think the distinction is one of, candidly, quantity. If you look at the record in this case, how many times the district court talked about protecting the rehabilitation of my client specifically, and how he wanted a 20-month continuance from the first day of the sentencing hearing. But isn't that because that's the argument that you made? I don't mean you, literally, but your client made? Your client said . . . I mean, it's a little hard to blame the district court for talking a lot about this because it was the primary mitigation argument that was made, right? And so when you say, oh, well, it's quantity, if the district court hadn't talked about his mental health challenges and the treatment thereof, you would be up here saying that the district court failed to adequately engage with the primary mitigation argument. But when he does engage with the argument that you've made, you now say, well, he engaged with it too much. I get that we hold district courts to an impossibly high standard in sentencing, but this seems like even beyond what our court has demanded of district court judges. If I could respond, Your Honor, what I would say to that is, if we take the statement in isolation, for example, when the district court in this case said exactly the hypothetical I think Judge Hyden's proposed, you know, Mr. Malakou is very dangerous when he's not on his medication, you know, and so X, Y, Z. I think if we have that alone, candidly, Your Honor, I don't think it's a tapioca violation. I don't think it comes close. And I understand that this is a lot of line drawing that we have to do here, and candidly, a lot of second-guessing. But you know, the judge in this case, you know, talked about . . . When you say in isolation, do you think that that's what we're supposed to do, that we really try to identify sentence fragments to understand what was happening, or do we look at the sentencing as a whole to try to make a judgment under Tapia as to whether the sentence was increased as a result of rehabilitation, in order to permit rehabilitation? I think, Your Honor, you appropriately state the standard in that it's a holistic review, we have to show that it's causally connected, right, to an increase in the prison sentence, which is where, you know, when the judge talks about additional incarceration is necessary for additional medical care and those sorts of things, we think that goes to, again, the rehabilitation. And we think the very unique process of . . . Why wouldn't we just say in that example, I'm not sure that's a great example for you, but assume that that's what was said, given that we have all this discussion about how the medicine is necessary to keep society safe, like, why do you, like, you know, not have some sense of giving the district court the benefit of the doubt that when it's saying that, it's actually referencing what it's been talking about for the rest of the hearing? Well, I think the district court is referencing . . . maybe I don't understand Your Honor's question. So the better part of the hearing is, you need this medicine because otherwise you're super dangerous. And we all acknowledge that incapacitation is a valid reason for imprisonment. And so when he says later on, you know, additional time for medication, why didn't we just think of that as incorporating the reason for the medication is actually incapacitation, not some form of rehabilitation post-prison time? Well, I think prison . . . considering rehabilitation within the prison setting is inappropriate, and I think that's the judgment that Congress has made with the Sentencing Reform Act of 1984, Your Honor. You know, I think if we look at the structure of the sentencing, indeterminate sentencing that we had prior, is that courts routinely, you know, punted these decisions. Obviously, we had the Parole Board involved in those sorts of things, but we had a policy judgment prior that said, we will look at whether or not you have rehabilitated, whether you have programmed, whether or not you've received medical care, those sorts of things, and make a decision on when to release you, fundamentally. That's what we did pre-1984. I'm sorry, Your Honor. No, go ahead. Please. And after 1984, what Congress did and what we are instructed now for the United States Supreme Court to do is to say, do not consider prison as a way to promote rehabilitation, period, full stop. And so do not consider it in the sense of when we're talking about why . . . my hypothetical, I guess not a hypothetical, but my response would be, when the court says, please come back, and I'm going to consider you for a compassionate release motion if you've been medically compliant and doing what you need to do there, and those sorts of things. I think that gives the game away, Your Honor. But wait, why doesn't that suggest this is the top of your footnote, where the court specifically says, we aren't deciding . . . we're deciding that you can't order the defendant to have more incarceration because prison might make him better. We specifically don't decide whether you can have the prospect of less incarceration for the same reason. Like, that's the footnote . . . that's the question they reserve in the top of your footnote, right? Saying, like, if you get better, I might let you out sooner, seems to me to implicate the top of your footnote, not the top of your whole . . . I mean, our response would be that we think it implicates what's really driving the sentencing in this particular case, and I understand that that question was reserved from Tapia, and whether or not . . . And it would be an odd world to . . . I mean, we talk about all these compassionate release motions we get, and the main argument that defendants are properly, it seems like to me, making is, no, no, no, no, I've been rehabilitated, right? Like, I've done all this stuff in prison that's really great, like, you know, let me out. I also have this, you know, extraordinary and compelling reason, but the fundamental argument that they're making is, like, I'm a changed person. Agreed, Your Honor, and, you know, as someone who practices and does a lot of those things under 3582C1A, absolutely, that is something that you can consider in the framework, the rehabilitation, what has happened while they're in prison . . . But why isn't this reference to the 20-month issue exactly that, right? It's a suggestion that ends up not happening, obviously, but it's a suggestion that, like, if you do really well, then I'll have confidence in the safety of the community, so let's try this. Like, that doesn't seem like it's problematic to me, under the footnote or under the . . . under the footnote we're talking about, but also on the very nature that it's about the safety of the community. Well, Your Honor, I would disagree with that. You know, our position would be that the whole point of the 3582A analysis is different than 3582C1A, with the extraordinary and compelling reasons that must be consistent with the Sentencing Commission policy statement, X, Y, Z. However, under 3582A, we're specifically instructed by Congress to not consider prison as a form of rehabilitation or correctional treatment. So our discussion so far has been almost exclusively about whether there's a TAPIA error, and let's just posit that based on JA191, I think you have a good argument that there is a TAPIA error. But then you have a gigantic problem, which is that this is all forfeited. And when I think back to, like, why we have forfeiture rules, we have forfeiture rules because the whole idea is that by raising a contemporary misobjection, you might allow the district court to avoid error. And so when I'm thinking about . . . like, again, I will just posit that I'm very troubled with what the district court says on JA191, because that just seems to walk right over the TAPIA line. But then it also occurs to me that what's supposed to happen then is defense counsel is saying, excuse me, your honor, I'd like to remind you about TAPIA. So if you are suggesting you're giving my client a longer sentence so he can get rehabilitation, that would violate TAPIA. And because what's supposed to happen then is the district court's like, thank you for bringing that to my attention, you're absolutely right, let me rethink this, let me clean up my language, and we're never here. So you're just blowing past Alano prong two, and I really think you have a massive Alano prong two problem. Well, your honor, candidly, we . . . I agree, and I wasn't obviously there at the sentencing hearing. But you agree you have a massive Alano prong two problem? I agree that I have a . . . that we have an issue with forfeiture, candidly, in this case. Right, but you haven't been talking about prongs two, three, or four of Alano. Well, your honor, we would argue that we're still subject to plain error review. Clear or obvious. So it's not enough that this is a TAPIA error, it is clear and obvious that this is a TAPIA error. Yes, your honor, and we would say in this case that it's clear and obvious because of the numerous instances where the judge . . . you know, when we review the cases, and we try to review the cases that this court has handed down on TAPIA and those sorts of things, normally it's even more reading the tea leaves, is my experience, is that we're trying to say, well, is what they're getting at rehabilitation, is what they're getting at X, Y, and Z, you don't have the district court typically saying . . . And then even if you can somehow get over Alano two, you run smack into Alano three and four, and as I read you on three, you're basically like, well, they can't show it's harmless, and then I would say, I read Alano again this morning, and Alano says it's not their burden to show it's harmless, it's your burden to show it's harmful. So it's your burden to show that even assuming the district court considered something it shouldn't have considered, that you can establish that it wouldn't have done the same thing anyway. Yes, your honor, I think we have to show that there's a non-speculative basis for concluding that the district court would have imposed a prison sentence of at least one day less. What about the language where the court said essentially that some period of additional incarceration is necessary, at least in part, to provide your client with the medical care and correctional treatment in a manner most effective? That sounds to me like a causal link between the need for rehabilitation and the fact that but for this need, the sentence would have been something different, something less. I would agree, your honor. Okay, what about Alano prong four? Because the one thing I know from the Supreme Court is what you cannot do, the one move that is not allowed is to say, which candidly, I think your brief comes close to forfeiting any argument on Alano prong four, because you're all like, for the reasons we've said, this seriously affects the fairness integrity. And the Supreme Court has said, no, no, no, there's literally almost no error that categorically satisfies prong four of Alano. The Supreme Court has said, this is a fact-specific, context-specific, there is no such thing as prong four of Alano. So A, well, why isn't it a problem that your brief doesn't really brief prong four of Alano at all? And second, how can you get over prong four of Alano? Well, your honor, we would submit that we get over prong four of Alano because it goes to the fairness and integrity of the proceedings, because it's so clear, your honor, from 3582A and from the structure of the Sentencing Reform Act. But that sounds like any, that sounds like an argument that any topia violation satisfies prong four. And I know from the Supreme Court, I'm not allowed to say any topia violation satisfies prong four. I would agree, your honor, that any topia violation would not satisfy prong four. We would submit, your honor, that this is a particularly egregious topia violation, as we've submitted and we've lined out in our brief, given the replete references to, in the rec. So why, just help me understand, so the language in Alston, I mean, maybe it was the same district court judge, because it seems to be, like, very similar, that this sentence will provide the needed treatment of care in the most effective manner possible. It seems like maybe the same judge, I don't actually know that, but extraordinarily similar language. And we say there that that's not a topia problem. So help me understand, I mean, I sort of got the same language here as I do in Alston. And why isn't that, like, enough, if we're on the plenariline, or just, like, why doesn't Alston sort of control here? Yes, sir. May I respond? Absolutely. Judge Richardson, we would submit that in Alston, and as in, I believe, also in Lemon, these are passing references and a one-off reference, right? And in our case, what we have here is a series of references and making clear that it truly is all about rehabilitation, not just a recitation of the 3553A factors, you know, where they just tick off the need to provide the best medical care in the correctional facility and those sorts of things. Thank you. Thank you very much. Thank you, Your Honor. Good morning, and may it please the Court, Jacqueline Bechara for the United States. I can start with the quotation at JA191. It seems really bad. It seems some additional period of incarceration is necessary for reasons X and Y, and reason Y seems like a very clear topic of violation. So if I could push back on that in a few points. First, some period of additional incarceration in context, I agree with, I believe it was Judge Richardson who pointed out, the Court, this is, of course, a claim of procedural error, and when it comes to procedural errors, the Court reviews the context of the sentencing transcript as a whole. Here, what the district court was getting at was that I'm not going to give you time served because of these 3553A factors. So additional to what you've already done as opposed to additional what I would otherwise have done? Yes, correct. Second, we know that reference to the need to protect the public is a perfectly legitimate concern as you were getting at in my friend's opening argument. But here the district court specifically distinguishes between protecting the public and some other reason. Yes, and then my third point was going to jump off of Judge Richardson's point. In my notes, I have, this is just like Alston. Just to clarify, I don't think it was the same judge. This was Judge Alston, but Alston was decided before Judge Alston took the bench in the Eastern District of Virginia. So I don't think it was the same judge, but I don't think that affects this Court's disposition of this case. They share sentencing scripts sometimes. So why wouldn't we also say that at best there's, you know, Judge Heidens wants to read 191, I think fairly, to say we're going to have imprisonment time for two reasons, right, to protect and to medicate. But it seems a little odd to read those as truly distinct when the district court has spent the better part of the sentencing hearing describing how those two are inextricably intertwined. And so maybe as a matter of grammar you read these as X and Y, but reading the transcript as a whole has revealed that this district court believes strongly that X is driven by Y. And so to include two by the use of the word and instead of a slightly different conjunction is like, seems pretty demanding of district court judges' oral pronouncements. Yes, I agree with that, Your Honor. I mean, I think the overarching gist of both of the hearings that occurred on remand here is that everyone, both sets of counsel and the district court, were concerned about the defendant's ability to sort of conduct himself with other people and the danger that he presented to the public because of his history of noncompliance with medication, right? There were at least two documented periods during his incarceration where he was refusing medication that resulted in serious disciplinary infractions. And so, frankly, I am not sure how the district court could have, without procedural error, resentenced Mr. Malacu without considering his need for some kind of medication to resolve his schizophrenic hallucinations and delusions. Can I just push back a little bit on Alston and the language there, your claim that this is essentially Alston II, and I'll just read it again, maybe Judge Richardson did this, but in Alston the judge said, this is a sentence sufficient but not greater than necessary. It is a sentence that will promote respect for the law, that will discourage this type of conduct. So there's the rationale for the sentence. And then it seems to me the judge says, also as an added benefit, it provides an opportunity to protect the public and the needed treatment of care in the most effective manner possible. It seems to me that the judge there has decided the sentence on the very appropriate grounds that a judge has to decide the sentence. And then mentions as an afterthought that it provides an opportunity to get medical care. This case is different, the quoted language that I recited to your colleague is, there's a very specific link to the need for additional incarceration for medical care. Don't you think that's different? I don't. If you look at this court's reasoning, the court said that the district court in Alston, I appreciate, but we can't say that they used perfectly identical language in sentencing the defendants. I mean, that would be problematic because each sentencing is unique. But what this court reasoned was that the district court- I've read a bunch of sentences where district judges seem to say verbatim things in different defendants' cases. Well, I think this defendant's condition was sufficiently unique. The more procedural requirements we place upon district court judges, the more likely they are to use a script in an attempt to fix or avoid the procedural problems that we've placed before them. Fair? That is fair, Judge Richardson. Just to answer Chief Judge Diaz's question, this court in Alston reasoned that the district court committed no error because he was referencing 3553A2D, which he's expressly instructed to do by the statute. That's exactly what Judge Alston was doing here by saying the need to provide the defendant with medical care and correctional treatment, which as Judge Richardson noticed, was bound up inescapably with the need to protect the public from the defendant if he fell out of compliance with his medication. What about the fact that the judge was inclined before he was dissuaded to continue the case for almost two years in order to ensure treatment? Does that suggest that somehow the judge was unduly fixated on rehabilitation at the expense of the other factors? I don't think so, Your Honor, because if anything- well, okay. TAPIA doesn't concern proposing a continuance. All it concerns itself with is either imposing or lengthening the term of imprisonment. And if anything, the district court was proposing, hey, if you demonstrate- so at the time of the actual resentencing, which was January 2024, Mr. Malacu had only been compliant with his treatment protocol for approximately eight months. And so the district court was proposing, if you can demonstrate a longer period of compliance, I actually might give you a shorter sentence. I might agree to time served. So that is the opposite of a TAPIA error. It's the reserved issue from TAPIA. So I don't think that that sort of demonstrates that the statement at JA-191 was implicitly a TAPIA error. But in any event, as Judge Heitens was pointing out, this case fails at the second and third and fourth prongs of Alano. My colleague hasn't identified any other case where the court has held that there was a plain TAPIA error based on something like this, which is, as Dr. Bloomberg testified and the district court recognized, this is an incurable condition. There is no particular treatment course or program that BOP provides after which everyone could declare, okay, Mr. Malacu is in remission. So this is not an instance of plain TAPIA error where the district court is saying, I'm going to impose this sentence so that you can complete this particular- So I assume you're aware of what happened in TAPIA on remand to the Ninth Circuit, right? Yes, I am aware. They granted relief on a forfeited error. So why is this error different than that? Because, I mean, we're obviously not bound by maybe we think the Ninth Circuit was wrong, but we try to avoid creating circuit splits. So could you just walk me through how we would say, the fact that we are saying there's no clear obvious error here is not inconsistent with what happened on remand in TAPIA itself, where the Ninth Circuit said there was clear and obvious error. What's the distinction between this case and TAPIA in that regard? Okay, I mean, the factual distinction is that in TAPIA, the district court specifically said it was selecting the length of the sentence in order to permit the defendant to complete the 500-hour RDAF program. But it just seems like the district court in TAPIA could have said basically the same thing that you say the district court said here, which is like, you're not safe until you've completed drug treatment. So I'm not letting you back into the community until you complete drug treatment, because until you complete drug treatment, you're a danger to the society. And at least the Ninth Circuit didn't buy that sort of reformulation of what the district court had said in TAPIA. But that's not what the district court said in TAPIA. And I think to hold otherwise in this case would be inconsistent with this court's decisions in cases like Bennett and Lemon, which held that TAPIA error was not plain and in any event did not affect the defendant's substantial rights because of the sort of overarching considerations that made clear that the district court would not have imposed, the defendant could not meet his burden of showing that there would have been a different result if the district court had not mentioned this rehabilitative purpose. Does it matter if we're, I don't care whether you put it in prong three or prong four. I noticed that you mentioned to us that he is in a re-entry facility, the defendant here. He has been transferred to home confinement. Home confinement. Yes. Does that bear on three and four, that when we, particularly four, when we start to sort of say the circumstances that we find ourselves now. A re-sentencing, it seems to me, has some possibility to harm him. Maybe, but probably doesn't have an ability to help him either. And so if we sort of like look at prong four, does that matter at all or is that too pragmatic? We haven't made that argument. I don't, I guess I don't know of a case offhand where the court has said basically, we don't think this error is worth correcting because the defendant is essentially already out. Well, but what prong four says in cases like Johnson is like, you know, even, even if a defendant, the lingering debate about whether the fourth requirement is a fourth prong, or if it's just an all other things equal thing at the end. I'm saying like, even if there's error, even if it's clear and obvious, even if it affected the defendant's substantial rights, the court has discretion to correct. The court is never required to correct the error. And the court has discretion to do so if and only if failing to correct the error will seriously affect the fairness, integrity, or public reputation of judicial proceedings. And I guess what I understand Judge Richards is to be saying is like, the effect of not correcting the error seems likely to be he's in exactly the position he's in right now. So it's not clear that, like, that's how I would understand the argument. What's, what is your take on that? Okay. I mean, you know, as a practical matter, if the court were to say, no, we think this requires a resentencing, there is still a little bit of time remaining on the term of imprisonment, which the district court could theoretically reduce. Of course, our position is that the district court would impose the same term of imprisonment because of the seriousness of the offense and the danger. So given that where we are, your absolute, his, not your his, that given where we are right now, this individual's absolute best case scenario is perhaps shortening by some marginal amount a period of home confinement. Yes, because the other point I would make is that Mr. Malauku never requested less than three years of supervised release. I don't know if the court has any other questions. Thank you very much. We ask that you affirm. Thank you. Your Honor, just very briefly, to Judge Richardson's point, my client already got the max available under the current scenario. Yeah, because he's a 20-year max. Yes, Your Honor. It can't actually hurt him. Yes, Your Honor. So I wanted to address that real quickly. Two, with regards to home confinement, he is still taking... Although maybe, right? I mean, if they, I wonder, I actually don't know what the answer to this is, but if they schedule a re-sentencing, one could imagine BOP deciding that they need to take him back into custody and they need to put him on the marshal's bus to getting back to a facility in order to re-sentence him, because he's technically a custody inmate. And so I wouldn't be surprised if BOP took him back to custody in order to deliver him to the district court with the district court orders as a parent. I don't know, Your Honor. You know, candidly, that would be up to the BOP. They wouldn't tell me even if I wanted to know. He is technically still a BOP inmate at this point, even though he's under home confinement. He's on pre-release custody, which means if he violates or does anything wrong or those sorts of things, it is far more actually intensive than his supervised release conditions. If he violates those, he goes back to prison, do not pass go, those sorts of things. So just for purposes of whether or not there could still be some sort of prejudice or harm, and I want to be clear, there's no mootness argument. I don't take my friend making that argument. No, I didn't take it either. But when we talk about prong four, I get it's not moot, right? That's totally fair. But we talk about prong four and sort of the fairness and integrity of the system. It feels quite different than if he had 10 more years inside of BOP than what we have today. Certainly, Your Honor. And the sentencing happened in 2024, and there was obviously significantly more time while this appeal was pending and those sorts of things. But we recognize the practical reality of it as we are here today. But if the court has no further questions, we would ask that the court reverse and remand. All right. Thank you. Thank you, Your Honor. Thank you, Mr. DeLuca. I want to thank both counsel for their fine arguments this morning. We'll come down and greet you and adjourn until 2.30 this afternoon. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens